UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
VERA L. GIVENS,

                              Plaintiff,                           11 Civ. 2568 (PKC) (JCF)

       -against-

                                                                      MEMORANDUM
                                                                     AND ORDER

CITY OF NEW YORK,
NEW YORK CITY DEPARTMENT
OF CORRECTIONS, NEW YORK CITY
COMMISSION ON HUMAN RIGHTS,
COMMISSIONER PATRICIA GATLING,
PAUL LABOSSIERE, MARK WILSON,
WARDEN WILLIAM THOMAS,
WARDEN CARMINE LABRUZZO,
DEPUTY WARDEN DALE DOUGLAS,
DEPUTY WARDEN DIANE CARN,
CAPTAIN RONELL VISMALE, CAPTAIN
CYNTHIA BARRETT, CAPTAIN GERALD
VAUGHN, CAPTAIN PEDRO ROJAS,
CAPTAIN JACQUELINE BORGES, DEPUTY
PAMELA WALTON, C.O. PHYLLIS SMALL,
C.O. KENNETH CHAPMAN, C.O. WILLIE
GLOVER, C.O. CHANDRA LASONDE,
EEO COMMISSIONER LUIS BURGOS,
EEO INVESTIGATOR MIGDALIA ORTEGA,
COBA PRESIDENT NORMAN SEABROOK,

                              Defendants.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        Vera Givens, plaintiff pro se, brings this action against the above-captioned defendants asserting discrimination on the basis of disability in violation of city, state, and federal law. Defendants City of New York ("City"), New York City Department of Corrections ("DOC"), Warden Carmine Labruzzo, and Equal Employment Opportunity ("EEO") Commissioner Luis R. Burgos (collectively "City Defendants") now move to dismiss the

Amended Complaint for failure to state a claim upon which relief can be granted. Defendant Norman Seabrook separately moves to dismiss on the same ground. Defendants New York City Commission on Human Rights ("CCHR"), Patricia L. Gatling, Paul Labossiere, and Mark Wilson (collectively "CCHR Defendants") move for judgment on the pleadings. For the reasons discussed below, the federal claims are dismissed as to all defendants, and the Court declines to exercise supplemental jurisdiction over the city and state law claims.

BACKGROUND

The facts below are taken from plaintiff's Amended Complaint and the record of her state administrative proceedings. The Court consults the state administrative record because plaintiff references both her termination hearing and her CCHR complaints—and names CCHR as a defendant—but does not fully describe the proceedings or their outcomes. See Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993) (court may "consider documents incorporated by reference or attached to the complaint as exhibits, documents the plaintiff knew of or possessed and relied upon in framing the complaint, and items of which judicial notice maybe taken"); Evans v. New York Botanical Gardens, No. 02 Civ. 3591, 2002 WL 31002814, *4 (S.D.N.Y. Sept. 4, 2002) (court "may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment.")

Plaintiff began working for DOC in 2001. (Am. Compl. ¶ 3.) In May and September 2004, plaintiff injured her right foot and knee, necessitating physical therapy and medication. (Am. Compl. ¶ 4.) In January 2005, plaintiff asked for and received a day-tour accommodation. (Am. Compl. ¶ 5-6.) In February 2006, plaintiff asked for and received a transfer to a Bronx facility but was put on a rotating shift. (Am. Compl. ¶¶ 6-7.) In September

2006, plaintiff submitted a doctor's note "requesting" a full-duty morning tour. (Am. Compl. ¶ 8.) In October 2006, DOC briefly granted plaintiff a morning day tour but quickly revoked it. (Am. Compl. ¶¶ 9-12.)

Plaintiff then contacted the EEO office of DOC to complain about the withdrawal of her day-tour accommodation. (Am. Compl. ¶ 13.) The EEO office responded on October 30, 2006, that DOC could not accommodate plaintiff because plaintiff's documentation did not establish a disability. (Am. Compl. ¶ 14.) Plaintiff made numerous appeals for reinstatement of her accommodation to different officers of DOC, the EEO office, and the Correction Officer Benevolent Association ("COBA"), but she received no further accommodation. (Am. Compl. ¶¶ 15-20.)

In August 2007, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") and her first complaint with CCHR, alleging that DOC had discriminated against her by refusing to accommodate her disability.[1] (Am. Compl. ¶ 23; Minnah-Donkoh Decl. Ex. A, CCHR Verified Complaint, August 2, 2007 ("Ex. A").) Thereafter, several events occurred that plaintiff alleges were retaliation for her complaints.

First, on December 5, 2007, plaintiff's car was "vandalized" while it was parked in the lot of a "secured/camera monitored correctional facility." (Am. Compl. ¶ 21.) DOC concluded that the damage was done by the wind, but plaintiff alleges that DOC did not conduct an adequate investigation. (Id.)

Second, during much of her "sick leave," DOC ordered plaintiff to appear at the Health Management Division ("HMD"). (Am. Compl. ¶ 34.) She was required to report to

---

[1] Plaintiff's Amended Complaint does not make clear when she filed either the EEOC charge or the CCHR complaint. However, the CCHR complaint itself (Ex. A) is dated August 3, 2007, and it references the filing of the EEOC charge (see Ex. A ¶ 19).

HMD four days in one week in July 2008 and has been required to report even when the doctor she was scheduled to see was not present. (Am. Compl. ¶ 35.)

Third, in June 2008, on the basis of plaintiff's allegedly excessive absences and other alleged misconduct, DOC began disciplinary proceedings against plaintiff by filing "charges and specifications" against her before the New York City Office of Administrative Trials and Hearings ("OATH"). (Am. Compl. ¶ 31.) In September 2008, OATH held a hearing on the charges, at which plaintiff testified and presented documentary evidence. (Minnah-Donkoh Decl. Ex. C, Report and Recommendation, OATH Index No. 393/09, Dec. 29, 2008 ("Ex. C"), at 1.) On December 29, 2008, Administrative Law Judge ("ALJ") Kevin F. Casey issued his Report and Recommendation recommending that petitioner's employment be terminated. (See id.) ALJ Casey concluded:

> While respondent [Givens] attributed most of her absences to work-related injuries, that claim was not credible. In any event, her absenteeism is extraordinary. She missed nearly 140 days in 14 months. Respondent also violated Department procedure when she filed a complaint against a co-worker without waiting for her command to conduct a proper investigation. All of this evidence demonstrates that respondent cannot be relied on to perform her obligations as a correction officer.

(Id. at 10.) On February 3, 2009, DOC terminated plaintiff's employment. (Minnah-Donkoh Ex. D, CCHR Determination and Order, September 30, 2010 ("Ex. D"), at 2.)

Meanwhile, on August 25, 2008, plaintiff had amended her CCHR complaint to add a charge of retaliation based on the events described above. (See Minnah-Donkoh Decl. Ex. B ("Ex. B"), ¶¶ 18-20.) On September 10, 2010, CCHR issued its Determination and Order after Investigation, which determined that "there is NO PROBABLE CAUSE to believe that Respondents [DOC] engaged in the unlawful discriminatory practices alleged," either by removing plaintiff's accommodation or by retaliating for her filing of complaints. (Ex. D. at 1.)

4

CCHR found that, as regards the accommodation, DOC had established a history of engaging in a "meaningful interactive process" with plaintiff and that DOC had offered her a steady tour—though not necessarily a steady day tour—in 2006 that would have met plaintiff's stated needs. (Id. at 2.)  As regards retaliation, CCHR found nothing suggestive of retaliation in the damage to plaintiff's car, which had been investigated by the police, or in requiring plaintiff to appear at HMD.  (Id. at 3.)  Finally, DOC's decision to charge plaintiff and seek her termination was the result of "non-discriminatory business judgment" after plaintiff was absent from 47% of her scheduled work days in a 14-month period.  (Id.)

Upon plaintiff's request, the Chair of the Commission reviewed the CCHR determination; she affirmed the No Probable Cause determination. (Minnah-Donkoh Decl. Ex. G., CCHR Determination and Order after Review, January 18, 2011 ("Ex. G").)

Plaintiff then brought an Article 78 petition in the Supreme Court of the State of New York, County of New York, for a review of the CCHR determination, and the Supreme Court concluded that the CCHR determination was supported by substantial evidence.  Givens v. Gatling, Index No. 101969/2011 (N.Y. Sup. Ct. August 11, 2011) (unfiled judgment) (reproduced as Minnah-Donkoh Decl. Ex. N).  The state court rejected plaintiff's argument that CCHR had inadequately addressed her retaliation complaint, holding that "DOC did try to reasonably accommodate petitioner and [] petitioner's termination was motivated by valid business reasons."  (Id. at 12.)

On March 1, 2011, EEOC adopted the CCHR findings, dismissed plaintiff's charge, and issued a right-to-sue letter.  (Compl. Attach. 1.)  Plaintiff filed her Amended Complaint with this Court on May 20, 2011.  (Docket # 12).  The Amended Complaint repeats

5

essentially verbatim the allegations plaintiff made in her amended complaint to CCHR (compare Ex. B ¶¶ 1-22; with Am. Compl. ¶¶ 1-20, 67, 71-73) and adds new factual allegations.

Briefly, the additional allegations are as follows.  First, two DOC Captains, defendants Burges and Vismale, harassed and threatened plaintiff.  (Am. Compl. ¶¶ 23, 58-63.) Second, another correction officer, Phyllis Small, assaulted plaintiff and afterward was treated favorably by her superiors (aside from being suspended), while plaintiff was treated unfavorably. (Am. Compl. ¶¶ 25, 27-30, 48, 50-52).  Third, a correction officer who suffered from the same "panic disorder/anxiety disorder" as plaintiff was absent more than plaintiff, but no charges were brought against that officer.  (Am. Compl. ¶¶ 38, 40.)  Fourth, COBA and COBA's president, defendant Seabrook, successfully fought charges against a different officer who had more absences than plaintiff (Am. Compl ¶¶ 42-46, 65-66); but, instead of supporting plaintiff, COBA "continued to discriminate, annoy, intimidate, harass and in a retaliatory bias manner issue a news letter" discriminating against plaintiff and championing Phyllis Small.  (Compl. ¶ 49.)

On the basis of the foregoing alleged conduct, plaintiff asserts violations of New York City law, New York State law, and Titles I and V of the Americans with Disabilities Act ("ADA").  (Am. Compl. ¶¶ 67, 71-73); see N.Y. City Admin Code § 8-107; N.Y. Exec. Code § 296; 42 U.S.C. §§ 12112(a) & (b)(5), 12203(a).

## DISCUSSION

I. Standard of Review

For the purposes of a motion to dismiss, all non-conclusory factual allegations of the non-movant are accepted as true, see Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009), and all reasonable inferences are drawn in favor of the non-movant, In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007).  The same standard applies to motions for judgment on the

6

pleadings.  L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 429 (2d Cir. 2011).  Despite this solicitude, however, affirmative defenses that are apparent on the face of a complaint may be raised and considered on a motion to dismiss.  Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir.1998); see also Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992) (res judicata as basis for dismissal).

> II.   There is No Individual Liability
> for ADA Discrimination or Retaliation Claims.

Title I of the ADA prohibits disability discrimination, including failures to accommodate, see 42 U.S.C. § 12112(a) & (b)(5)(a), and Title V prohibits retaliation, see 42 U.S.C. § 12203(a).  However, neither of these ADA claims is enforceable against individuals.

"[T[he retaliation provision of the ADA . . . cannot provide for individual liability."  Spiegel v. Schulmann, 604 F.3d 72, 79 (2d Cir. 2010).  This is so because "'the remedial provisions of Title VII [of the Civil Rights Act of 1964], including § 2000e-5, do not provide for individual liability,' and the retaliation provision of the ADA 'explicitly borrows the remedies set forth in § 2000e-5.'"  Parada v. Banco Industrial de Venezuala, C.A., No. 10 Civ. 883, 2011 WL 519295, *4 (S.D.N.Y. February 15, 2011) (quoting Spiegel, 604 F.3d at 79); see also Tomka v. Seiler Corp., 66 F.3d 1295, 1314 (2d Cir. 1995) (no individual liability under Title VII).

Similar reasoning dictates that there can be no individual liability for discrimination.  Parada, 2011 WL 519295 at *4.  Under Title VII, there is no individual liability for discrimination, because individual employees are not "employer[s]" as defined and regulated by that title.  Tomka, 66 F.3d at 1314.  The ADA definition of "employer" mirrors the Title VII definition.  Compare 42 U.S.C. § 12111(5), with 42 U.S.C. § 2000e(b).  Therefore, individual employees are also not employers as defined and regulated by the ADA.  Parada, 2011 WL

7

519295 at *4; see also Corr v. MTA Long Island Bus, 27 F. Supp. 2d 359, 370 (E.D.N.Y.) ("In light of Tomka, and the overwhelming authority in the Second Circuit construing Tomka as prohibiting individual liability under the ADA, Plaintiff's ADA claim against [individual defendants] must be . . . dismissed."), aff'd, 199 F.3d 1321 (2d Cir. 1999) (unpublished opinion). Accordingly, the ADA claims against all individual employees named in the Amended Complaint must be dismissed.

### III. DOC is Not a Suable Entity.

The New York City Charter provides that "all actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter Ch. 17 § 396. Therefore, DOC is not a suable entity, Adams v. Galletta, 966 F.Supp. 210, 212 (S.D.N.Y. 1997), and it must be dismissed from the action.

### IV. Plaintiff States No Claim against CCHR.

In order to state a claim for relief, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct at 1949. The Amended Complaint makes no allegations at all regarding misconduct by CCHR. (See generally Am. Compl.) Accordingly CCHR is dismissed from this case. See, e.g., Clarke v. Flushing Manor Care Center, No. 02 Civ. 3079, 2009 WL 2136385, *1 n.1 (S.D.N.Y. July 17, 2009).

### V. Plaintiff's Accommodation and Retaliation Claims are Precluded.

Plaintiff's ADA claims against the City for DOC's alleged failure to accommodate and subsequent retaliation are barred by the doctrine of collateral estoppel, also

8

called issue preclusion.[2] The full faith and credit statute, 28 U.S.C. § 1738, requires that federal courts "afford the same full faith and credit to state court judgments that would apply in the State's own courts." Kremer v. Chem. Constr. Corp., 456 U.S. 461, 463 (1982). Thus, absent an express or implied repeal of section 1738, a federal court must apply the collateral estoppel principles of the rendering state. Allen v. McCurry, 449 U.S. 90 (1980) (section 1983 action); see Kremer, 456 U.S. 461 (Title VII action). Since the Court is pointed to no statute that repeals section 1738 as to ADA claims, the preclusion law of New York State applies. "In New York, collateral estoppel has two essential elements. 'First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination.'" Jenkins v. City of New York, 478 F.3d 76, 85 (2d Cir. 2007) (quoting Juan C. v. Cortines, 89 N.Y.2d 659, 667 (1997)).

In this case, the issues that resolve plantiff's ADA claim were necessarily resolved against her in state proceedings. Plaintiff asserts that DOC "violated title 1 of the Americans with disabilities act, 42 U.S.C. ¶ 12101 et seq on the basis of her disability and in

---

[2] Plaintiff's ADA claims may also be barred by res judicata, or claim preclusion. New York takes a "transactional" approach to claim preclusion, which precludes all subsequent claims arising from the same "factual grouping" underlying the first claim. Smith v. Russell Sage Coll., 54 N.Y.2d 185, 192-93 (1981). There is little doubt that the present action arises from the same factual grouping as the claims brought before CCHR. (Compare Am Compl., with Ex. B.) However, claim preclusion "will not be applied if the initial forum did not have the power to award the full measure of relief sought in later litigation." Davidson v. Capuano, 792 F.2d 275, 278 (2d Cir. 1986). In Davidson, the Second Circuit concluded that "damages for civil rights violations are not included in [the relief available in Article 78 proceedings]." Id. But, in Kirkland v. City of Peekskill, the Second Circuit distinguished Davidson and applied claim preclusion based on an Article 78 review of an administrative agency determination, because the agency had the power to award the full relief sought. In this case, plaintiff seeks punitive damages from the City, a form of relief that CCHR does not expressly offer. See N.Y. City Admin. Code § 8-120 (CCHR can require respondent to take affirmative action "including, but not limited to" various remedies among which punitive damages not listed). However, punitive damages are not available under federal employment discrimination law against "a government, government agency or a political subdivision." 42 U.S.C. § 1981(b)(1). Therefore, even assuming CCHR cannot award punitive damages, the relief available before CCHR was likely as extensive as the relief available now. If so, the present facts align with those of Peekskill, making claim preclusion appropriate.

retaliation." (Am. Compl. ¶ 71.)  Mindful of plaintiff's pro se status, the Court has read this statement to assert violations of both Title I and Title V of the ADA, which prohibit discrimination by failure to accommodate and retaliation, respectively.  See 42 U.S.C. §§ 12112(a) & (b)(5) (discrimination & failure to reasonably accommodate); 42 U.S.C. § 12203(a) (retaliation). But CCHR determined that there was no probable cause to believe that DOC had failed to accommodate plaintiff's alleged disability or retaliated against her, as those terms are defined in the city code.  (See Ex. D.)  The city code definition of disability is more generous than that of the ADA, Giordano v. City of New York, 274 F.3d 740, 753 (2d Cir. 2001), and the code's definitions of discrimination, failure of accommodation and retaliation are at least as broad as those in the ADA, compare N.Y. City Admin. Code §§ 8-107(1)(a), (7), (15), with 42 U.S.C. §§ 12112(a) & (b)(5)(a), 12203(a)-(b).  Therefore, the CCHR determination necessarily resolved the issues of accommodation and retaliation under the ADA.  The Supreme Court of New York's holding that the CCHR determination was supported by substantial evidence is a judgment entitled to preclusive effect.  See Kremer, 456 U.S. at 479-80 & n.21.

Plaintiff had a full and fair opportunity to litigate these issues.  "In testing the fairness of the earlier litigation, the presence of counsel on behalf of the losing party, the regularity of the procedures . . . the adequacy of those procedures in the particular case and the limits of the jurisdiction in the first court are all significant and helpful guides."  Read v. Sacco, 375 N.Y.S.2d 371, 375 (2d Dep't 1975).  In her proceedings before CCHR, plaintiff was represented by counsel, who later personally attested to the "large number of hours" and "time and energy put forth . . . to gain justice for [his] client."  (Am. Compl. Attach. 2, Affirmation of Lloyd Somer, at ¶ 3.)  CCHR made its determination based not only on a record including "medical notes, DOC's internal investigations into the petitioner's disability, and memos from

both parties, among other items," but also on the findings of the ALJ in the OATH hearing—a hearing at which plaintiff testified and presented evidence. Givens, Index No. 101969/2011 at 10; (Ex. C at 1). The Commissioner of CCHR, defendant Gatling, then reviewed "the complaint; the answer; comments from all parties (if submitted); the Determination and Order after Investigation; and complainant's request for review," and affirmed the determination. (Minnah-Donkoh Decl. Ex. G.) Finally, the Supreme Court of New York reviewed the determination, specifically considered plaintiff's contention that the CCHR investigation was "one sided and incomplete," and found the determination supported by substantial evidence. Givens, Index No. 101969/2011. In short, plaintiff, with the help of counsel, participated in extensive, regular procedures that provided her ample opportunity to vigorously litigate the issues of accommodation and retaliation. Cf. Kremer, 461 U.S. at 483-85 (holding that similar "panoply of procedures" under New York State Division of Human Rights, "complemented by administrative as well as judicial review," satisfies Due Process Clause). Therefore, plaintiff is now collaterally estopped from relitigating those issues.

      Plaintiff does not avoid this result by adding factual allegations to her Amended Complaint. As has been described, plaintiff now alleges harassment by superior officers, an assault by a fellow officer, and disparate treatment of others similarly situated. (See Am. Compl. ¶¶ 23-66.) These new allegations appear directed at bolstering plaintiff's retaliation claim, but as such they are further evidence factually supporting an issue that is already precluded: "[I]f the party against whom preclusion is sought did in fact litigate an issue of ultimate fact and suffered an adverse determination, new evidentiary facts may not be brought forward to obtain a different determination of that ultimate fact." Restatement (Second) of Judgments § 27 cmt. c; cf. Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 457 (1985) (relying on

11

Restatement (Second) of Judgments § 27).  Because the adverse resolution of these issues disposes of plaintiff's accommodation and retaliation claims under the ADA, those claims must be dismissed.

### VI. Plaintiff Fails to State a Hostile Environment Claim.

Alternatively, plaintiff may allege the new facts to support a claim for a different form of discrimination, namely a hostile working environment.[3]  Assuming arguendo that the Second Circuit recognizes a hostile working environment cause of action under the ADA, see, e.g., Braun v. Securitas Sec. Services USA, Inc., No. 07 Civ. 2198, 2009 WL 150937, *8 (E.D.NY. January 20, 2009), plaintiff still fails to state such a claim.

In order to state a claim for any violation of Title I of the ADA, a plaintiff must first file a charge as to that violation with EEOC.  McInerney v. Rensselaer Polytechnic Inst, 505 F.3d 135, 138 (2d Cir. 2007).  The purpose of this administrative-exhaustion requirement "is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." Stewart v. INS, 782 F.2d 193, 198 (2d. Cir. 1985) (Title VII requirement); see also 42 U.S.C. § 12117(a) (adopting procedures and remedies of Title VII).  That purpose "would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC." Miller v. ITT, 755 F.2d 20, 26 (2d Cir. 1985).  A hostile working environment claim, like any other Title I claim, is subject to this requirement.  See, e.g., Giannattasia v. City of New York, No. 09 Civ. 0062, 2011 WL 4629016, *3 (E.D.N.Y. Sept. 30, 2011).

A claim not actually exhausted may be deemed exhausted if it is "reasonably related" to the charge brought before EEOC.  Mathirampuzha v. Potter, 548 F.3d 70, 76 (2d Cir.

---

[3] The final paragraph of plaintiff's Amended Complaint alleges that "[r]espondents / defendants caused and/or exacerbated complainant's disability, caused undue hardship, and subjected complainant to a hostile working environment." (Am. Compl. ¶ 73.)  The paragraph continues with an extensive list of vaguely stated alleged wrongs from which it is not possible to infer any other non-precluded federal claims.  (See id.)

2008) (citing Butts v. City of New York Dep't of Hous. Preservation and Dev., 990 F.2d 1397, 1402 (2d Cir. 1993)).  A claim is reasonably related to the EEOC charge if it would fall within the scope of the administrative investigation of the charge.  See id.  The purpose of this "loose pleading" rule is to make allowance for an unrepresented employee filling out an EEOC charge with the primary purpose of alerting EEOC to the discrimination that the employee claims she is suffering.  Butts, 990 F.2d at 1402.  Accordingly, courts "focus on the factual allegations made in the EEOC charge" to determine whether the charge "gave th[e] agency adequate notice to investigate discrimination on the [newly alleged basis]." Mathirampuzha, 548 F.3d at 76-77 (internal quotations and citations omitted).  Ultimately "[j]udicial claims which serve to amplify, clarify, or more clearly focus earlier [EEOC] complaints are appropriate," but "[a]llegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate." McGuire v. U.S. Postal Service, 749 F.Supp. 1275, 1287 (S.D.N.Y. 1990) (quoting Ray v. Freeman, 626 F.2d 429, 443 (5th Cir. 1980)).

      When examining reasonable relation in the context of newly alleged hostile environment claims, the Second Circuit has emphasized that "[h]ostile environment claims are different in kind from discrete acts." Mathirampuzha, 548 F.3d at 76-77 (quoting Nat'l R.R. Passenger Corp v. Morgan, 536 U.S. 101, 115 (2002)).  Instead, a hostile work environment is created "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 78 (1998).  And, "[a]s a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Terry v. Ashcroft, 336 F.3d 128, 148 (2d. Cir. 2003) (internal quotations and citations omitted).  Because discrete

acts do not suggest a hostile environment claim, in <u>Mathirampuzha</u> the Second Circuit found plaintiff's hostile environment claim unrelated to his EEO charge describing a single, albeit severe, physical assault.  548 F.3d at 77.

In this case, the "reasonably related" analysis is complicated by plaintiff's omission of an EEOC charge from her pleadings.  However, plaintiff authorized CCHR to accept her federal charges on behalf of EEOC (Ex. B. ¶ 22), and EEOC adopted the findings of CCHR when it dismissed plaintiff's charge (Compl. Attach 1).  Therefore, the court assumes that plaintiff's amended CCHR complaint, prepared with the help of counsel, is at least as detailed as any earlier-filed EEOC charge, and, moreover, that the CCHR investigative record discloses the full extent of the charges actually investigated by CCHR on behalf of EEOC.

Review of these CCHR materials makes clear that plaintiff's hostile environment claim is not reasonably related to her administrative charges.  Plaintiff authorized CCHR to accept on behalf of EEOC the charge that DOC "violated Title I of the [ADA], on the basis of [plaintiff's] disability, and in retaliation." (Ex. A ¶ 19.)  Neither this nor any other paragraph in the amended CCHR complaint makes any mention of a hostile environment charge.  (<u>See</u> <u>id.</u>)  True, the amended CCHR complaint does allege that DOC failed to sufficiently investigate the damage to plaintiff's car in December 2007, forced her to appear excessively at HMD while on sick leave in 2008, and began termination proceedings against her in June 2008.  (<u>Id.</u>)  But these events do not suggest a hostile environment claim.  Although plaintiff alleges more events than did the plaintiff in <u>Mathirampuzha</u>, the events are still "episodic."  <u>Terry</u>, 336 F.3d 148.  Amd. instead of being "sufficiently severe . . . [to] create an abusive working environment," <u>Onacle</u>, 523 U.S. at 78, the alleged events are all administrative actions attenuated from plaintiff and her literal working environment.  Therefore, even if the administrative record did not reveal the

content of the administrative investigation, it would be clear that plaintiff's amended CCHR complaint did not give "adequate notice" of a hostile environment claim. See Mathirampuzha, 548 F.3d at 77. Moreover, the administrative record reveals that the actual CCHR investigation did not address a hostile environment charge (see Ex. D), so such a claim cannot have been "within the scope," Butts, 990 F.2d at 1402, of the administrative investigation. Instead, plaintiff's hostile environment claim is a new claim that relies on new factual allegations not presented for administrative review (compare Am. Compl, with Exs. A & B.), and to allow plaintiff to assert it now would thwart the purposes of administrative exhaustion, see Miller, 755 F.2d at 26.[4]

      VII.    The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's City and State Law Claims.

Section 1367 of title 28 of the United States Code governs the exercise of supplemental jurisdiction and states in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

Section 1367(c)(3) states that a district court "may decline to exercise

---

[4] If plaintiff had exhausted her hostile environment claim, she would be collaterally estopped from bringing that claim now. The premise of "reasonably related" exhaustion is the assumption that the new claim was reasonably within the scope of the administrative investigation. See Williams v. New York City Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006). If the hostile environment charge was within the scope of the CCHR investigation, then the CCHR determination also included a determination of no probable cause to believe DOC created a hostile working environment. The Supreme Court of New York's decision upholding that determination would then preclude relitigation of the issue whether the facts alleged gave rise to a hostile working environment, just as it precludes relitigation of the accommodation and retaliation issues. See Section VI, supra. And, as with the retaliation issue, plaintiff could not avoid preclusion of the hostile environment issue by offering new factual allegations to bolster her precluded assertion. See id. Plaintiff's claim cannot now be both non-exhausted and non-precluded.

supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." Although section 1367(c)(3) is couched in permissive terms, the Second Circuit has made clear that the Court's discretion "is not boundless." Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003). "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts balance the values of judicial economy, convenience, fairness, and comity—the 'Cohill factors.'" Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York, 464 F.3d 255, 262 (2d Cir. 2006) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Cohill, 484 U.S. at 350 n.7. Because plaintiff's federal claims are herein dismissed and none of the Cohill factors support exercising supplemental jurisdiction over the remaining city and state law claims, those claims are dismissed without prejudice.[5]

## CONCLUSION

For the foregoing reasons, the CCHR Defendants' motion for judgment on the pleadings (Docket # 17), City Defendants' motion to dismiss (Docket # 34), and Norman Seabrook's motion to dismiss (Docket # 54), are GRANTED, and the Amended Complaint is dismissed in its entirety. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

---

[5] The Court also notes that city and state law present jurisdictional bars to plaintiff's bringing any other city or state law claims, in any court, based on the same incidents that were the basis of her CCHR complaint. See N.Y. Exec. Law § 297(9); N.Y. City Admin. Code § 8-502; York v. Ass'n of the Bar, 286 F.3d 122, 127 (2d Cir. 2002).

Defendants' attorneys are directed to provide copies of all unpublished opinions cited herein to plaintiff pro se.

    SO ORDERED.

_____<br>
P. Kevin Castel<br>
United States District Judge

Dated: New York, New York<br>
       January 9, 2012